UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Kenneth Williams,

　　　　Plaintiff,

v.                                              Case No. 08-14246

Costco Wholesale Corporation,                   Honorable Sean F. Cox

　　　　Defendant.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

　　　　This employment discrimination and retaliation action is currently before the Court on

Defendant's Motion for Summary Judgment.　The parties have briefed the issues and the Court

finds that oral argument would not significantly aid the decisional process.　*See* Local Rule

7.1(e)(2), U.S. District Court, Eastern District of Michigan.　The Court therefore orders that the

motion will be decided upon the briefs.　For the reasons that follow, the Court shall GRANT the

motion.

BACKGROUND

　　　　Plaintiff filed this action in state court on or about August 22, 2008.　Defendant removed

the action to this Court on October 6, 2008.　The parties then proceeded with discovery and

Plaintiff was deposed, for the first time, on March 27, 2009. (Pl.'s Dep., Part I).

　　　　On April 23, 2009, Plaintiff sought leave to file an amended complaint, so that he could

add a claim under the Family Medical Leave Act, 29 U.S.C. §2601 *et seq*. ("FMLA").　This

Court granted leave and Plaintiff his filed his Amended Complaint on June 15, 2009, asserting

1

the following claims:

- "Person with Disabilities Act" (Count I), wherein Plaintiff alleges that Defendant violated Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") by "using disability as a motivating factor in terminating" him and by "unfairly evaluating" him;

- "Disparate Treatment" (Count II), wherein Plaintiff alleges that he "was qualified for his position and was unfairly denied an opportunity to continue in his position due to his disability";

- "Retaliation" (Count III), wherein Plaintiff alleges that Defendant retaliated against him, in violation of Michigan's Elliot Larsen Civil Rights Act, for having filed retaliation and workers compensation complaints.  Plaintiff alleges that "[o]n various occasions, [he] was informed that the defendant did not like the plaintiff filing either claim or working with restrictions.";

- "Michigan's Workers Compensation Anti-Retaliation Violations" (Count IV), wherein Plaintiff alleges that Defendant retaliated against him for having filed workers compensation claims; and

- "Violations of the Family Medical Leave Act" (Count VI), wherein Plaintiff alleges that he "has a disability that causes him to urinate frequently" and that he advised Defendant of his medical condition.  He alleges that Defendant violated his FMLA rights by terminating him and failing to grant him time off or restore him to his previous position.

After he filed his Amended Complaint, Plaintiff was deposed again on June 23, 2009.

(Pl.'s Dep., Part II).  Under this Court's 2nd Scheduling Order, discovery closed on June 30,

2009.  Following the close of discovery, Defendant filed its Motion for Summary Judgment on

July 31, 2009.

This Court's practice guidelines for motions for summary judgment provide, in pertinent

part, that:

a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in

separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Docket Entry No. 15).

Both parties complied with the Court's practice guidelines for motions for summary judgment to the extent that: 1) along with Defendant's motion and supporting brief it filed "Defendant's Statement of Material Facts Not in Dispute" ("Def.'s Stmt.") and 2) along with Plaintiff's Response, Plaintiff filed "Plaintiff's Answers to Defendant's Statement of Material Facts Not in Dispute" ("Pl.'s Stmt.").

The following material facts are gleaned from the parties' statements and the evidence submitted by the parties.

Defendant Costco Wholesale Corporation ("Defendant" or "Costco") operates more than 400 membership warehouses, at which it sells brand name merchandise to the public.  (Def.'s Stmt. at ¶ 1; Pl.'s Stmt. at ¶ 1).  Defendant maintains one such warehouse, Warehouse 390, in Livonia, Michigan at 13700 Middlebelt Road.  Melodi McCoy ("McCoy") was the Warehouse Manager at Warehouse 390 throughout Plaintiff's employment.  (Def.'s Stmt. at ¶ 2; Pl.'s Stmt. at ¶ 2).

Plaintiff started working for Defendant as a Part-Time Cashier Assistant at Warehouse 390 on October 4, 2005.  (Def.'s Stmt. at ¶ 5; Pl.'s Stmt. at ¶ 5).  Plaintiff was in school the entire time that he worked for Defendant.  (Pl.'s Dep., Part I, at 84).  Plaintiff testified that

Defendant accommodated his school schedule, scheduling his shifts around his various school schedules.  (*Id.*).

Plaintiff worked in a variety of positions throughout his employment, including Cashier Assitant and Cart Crew, Food Court, Front End Assistant, and Member Services Assistant.  (*Id.*). Throughout his employment with Defendant, Plaintiff had continual contact with the public. (Def.'s Stmt. at ¶ 9; Pl.'s Stmt. at ¶ 9).

Plaintiff worked in the Member Services Assistant position from June 4, 2007 until his termination on March 19, 2008.  As a Member Services Assistant, Plaintiff was responsible, in part, for watching the exit doors after store hours from his car, contacting store personnel if employees or members needed entry, and driving his car around the parking lot to monitor the lot for employee and member security purposes.  (Def.'s Stmt. at ¶ 7; Pl.'s Stmt. at ¶ 7).

In 2006, Plaintiff was diagnosed HIV positive.  (Def.'s Stmt. at ¶ 10; Pl.'s Stmt. at ¶ 10). Plaintiff testified that throughout his employment with Defendant, he has not taken any medications for his HIV status.  (Pl.'s Dep., Part I, at 192-93).  He further testified that during the time that he was employed by Costco, he was asymptomatic with respect to his HIV status. (*Id.*).

Dr. Tania Little, an infectious disease specialist, is one of Plaintiff's physicians.  (*Id.*). Dr. Little testified that, as of the time of her deposition on May 28, 2009, she had not prescribed any medications to Plaintiff pertaining to his HIV status.  (Little Dep. at 12).  Dr. Little further testified that as of May 28, 2009, Plaintiff is still asymptomatic with respect to his HIV status. (Little Dep. at 13).  She testified that from an HIV standpoint, Plaintiff has been doing quite well:

4

> Q. Quite well, what does that mean?
>
> A. That his numbers, meaning his CD4 cell count and his viral loads, has never gotten to a point where we needed to start treatment and he has never had any infections to suggest an AIDS defining illness. So he did not require any treatment and he has still not required any treatment.

(Little Dep. at 24).

On or about August 1, 2006, Plaintiff injured his right shoulder when he slipped and fell at work. Plaintiff filed a workers' compensation claim. (Def.'s Stmt. at ¶ 14; Pl.'s Stmt. at ¶ 14).

Plaintiff's physician has advised Plaintiff that his shoulder will not get better unless he has surgery on his shoulder. (Pl.'s Dep., Part I, at 189-91). Plaintiff decided not to have the surgery, however, because he is scared that he might "lose his arm." (*Id*.). Plaintiff's doctors have not told Plaintiff that losing his arm would be a potential risk of the surgery. (*Id*.).

On March 29, 2007, Dr. Little filled out a job analysis form for a Cart Assistant position that included a restriction limiting Plaintiff's work outdoors during inclement weather. (Def.'s Stmt. at ¶16; Pl.'s Stmt. at ¶ 16). Plaintiff admits that the inclement weather restriction only applied to the Cart Assistant position. (Def.'s Stmt. at ¶ 17; Pl.'s Stmt. at ¶ 17; Pl.'s Dep., Part II, at 56). On April 1 and May 4, 2007, Plaintiff submitted medical restrictions limiting the usage of his right arm. He was working as a Cashier Assistant at that time, which included cart crew duties, and his restrictions prohibited him from performing certain of the essential functions of his job (lifting duties). (Def.'s Stmt. at ¶ 18; Pl.'s Stmt. at ¶ 18).

On April 5, 2007, Plaintiff submitted FMLA paperwork to Defendant. (Def.'s Stmt. at ¶ 20; Pl.'s Stmt. at ¶ 20). At that time, Plaintiff submitted a "Request for Leave of Absence and Notification Regarding Family and Medical Leave Act (FMLA) and Other Similar State Leave

Laws" form that requested a personal medical leave for a serious health condition. (Ex. 10 to Def.'s Br.). Plaintiff requested time off starting on April 1, 2007 and ending on April 30, 2007. (*Id.*).

On April 18, 2007, however, Plaintiff submitted a new FMLA request, this time requesting intermittent leave for his HIV condition from March 29, 2007, through March 28, 2008. (Def.'s Ex. 11). The April 18, 2007 request noted that Plaintiff was not presently incapacitated but could experience frequent episodes of illness in the future that could incapacitate him for several days. The form did not mention any urination conditions, and did not state any restrictions about working in inclement weather. Defendant granted Plaintiff's FMLA request. (Def.'s Stmt. at ¶ 21; Pl.'s Stmt. at ¶ 21; Def.'s Ex. 11).

It is undisputed that Plaintiff was never denied FMLA leave by Defendant. (Pl.'s Dep., Part II, at 72). Plaintiff took intermittent FMLA leave and testified that on occasions when he did not feel well he took days off. Defendant allowed him to do so and brought him back to work after such absences. (Pl.'s Dep., Part II, at 79).

In January 2008, Defendant reduced Plaintiff's hours. (Def.'s Stmt. at ¶ 26; Pl.'s Stmt. at ¶ 26). Defendant often reduces employee's hours in January because it experiences reduced sales after the holidays. (*Id.*). Shifts are scheduled by seniority by Defendant and the schedules of full-time employees take precedence. (Def.'s Stmt. at ¶ 28; Pl.'s Stmt. at ¶ 28). Plaintiff had the lowest seniority in the department and was a part-time employee. (*Id.*).

Moreover, Plaintiff attended college throughout his employment with Defendant and Defendant accommodated Plaintiff's school schedule, scheduling Plaintiff's shifts around his classes. (Def.'s Stmt. at ¶ 29; Pl.'s Stmt. at ¶ 29). Plaintiff's school schedule for Spring 2008

6

limited his availability more than his Fall 2007 school schedule.  (Def.'s Stmt. at ¶ 31; Pl.'s Stmt. at ¶ 31).

Contrary to the allegations in his Complaint and Amended Complaint, Plaintiff admitted at his deposition that his insurance benefits were not affected by the hours reduction.  (Def.'s Stmt. at ¶ 27; Pl.'s Stmt. at ¶ 27).

On February 19, 2008, Plaintiff filed a Charge of Discrimination with the Michigan Department of Civil Rights and Equal Employment Opportunity Commission alleging retaliation.  (Def.'s Stmt. at ¶ 25; Pl.'s Stmt. at ¶ 25).  His charge challenged Defendant's decision to alter his work schedule.

Plaintiff alleges that on March 3, 2008, he submitted a letter to Defendant from himself, advising Defendant of his need to frequently urinate.  Defendant disputes that it received this letter.  In any event, the letter does not reference Plaintiff as having a condition that could cause him to urgently or unexpectedly urinate, and it was not prepared or submitted by Plaintiff's physicians.  (Def.'s Stmt. at ¶ 42; Pl.'s Stmt. at ¶ 42).

On March 13, 2008, Plaintiff was working as a Member Services Assistant.  (Def.'s Stmt. at ¶ 18; Pl.'s Stmt. at ¶ 18).  Again, as Member Services Assistant Plaintiff was responsible for watching the exit doors after store hours from his car, contacting store personnel if employees or members needed entry, and driving his car around the parking lot to monitor the lot for employee and member security purposes.  (Def.'s Stmt. at ¶ 7; Pl.'s Stmt. at ¶ 7).  On March 13, 2008, while working for Defendant, Plaintiff was issued a citation by the Livonia Police Department for urinating in public after Plaintiff urinated in Defendant's parking lot.  (Pl.'s Dep., Part I, at 227 & 229).  James Valdez ("Valdez") was the Night Floor Manager on duty at Warehouse 390

7

on that night.  (Valdez Decl., attached as Def.'s Ex. 15).  On the night of March 18, 2008, Valdez

received a report that a Livonia Police Officer had detained Plaintiff in the parking lot and

Valdez then spoke with Plaintiff and the officer.  After Valdez learned that Plaintiff had been

issued a citation for urinating in the parking lot, he sent Plaintiff home for the remainder of his

shift and contacted McCoy to inform her of the situation.  (*Id*.).

The next day, March 14, 2008, Defendant suspended Plaintiff pending termination for

urinating in the parking lot.  (*Id*.).  On March 19, 2008, McCoy terminated Plaintiff for his

misconduct on March 13, 2008, which violated Costco's work rules.  (Def.'s Stmt. at ¶ 40; Pl.'s

Stmt. at ¶ 40).

On March 19, 2008, Plaintiff saw Dr. Iqbal Jan and complained of frequency of

urination.  (Jan Dep. at 58).  This was the first time that Plaintiff had mentioned any complaints

about urination to Dr. Jan.  (*Id*.).  Dr. Jan testified that the medications that Plaintiff had been

taking would not cause him to use the bathroom more frequently.  (*Id*. at 59).  Dr. Jan testified

that Plaintiff only complained about frequency of urination on March 19th, not about

incontinence (being unable to control his urination).  (*Id*. at 12-13 & 61-62).

Dr. Little testified that on January 29, 2009, Plaintiff told her, for the first time, that he

had increased urinary frequency.  (Little Dep. at 16).  Plaintiff has never told Dr. Little that he

had uncontrolled urination or difficulty controlling his bladder.  (*Id*. at 17).

On the same day of his termination, Plaintiff submitted a note from Dr. Jan stating that

Plaintiff suffers "from HIV and severe anxiety," and that he "suffers from frequency of urination,

most likely due to anxiety and stress."  (Ex. 17 to Def.'s Motion; Def.'s Stmt. at ¶ 41; Pl.'s Stmt.

at ¶ 41).  This was the first time that Plaintiff had provided medication documentation to

Defendant regarding a condition, and he had already been cited for public urination and suspended pending termination by the submission date.  (*Id*.).  Moreover, the note from Dr. Jan did not indicate that Plaintiff suffered from incontinence or urgency issues regarding urination. (*Id*.).

During his deposition, Plaintiff testified that he often urinates on himself without warning, before he can do anything about it.  He does not wear a diaper, even though he admits he could purchase diapers for himself.  (Def.'s Stmt. at ¶ 37; Pl.'s Stmt. at ¶ 37).  Plaintiff testified that on the night of March 19, 2008, he began urinating on himself without warning, and did not have time to get to a restroom.  The nearest restroom in the warehouse was more than 30 seconds from the parking lot.  (Def.'s Stmt. at ¶ 33; Pl.'s Stmt. at ¶ 33).

Plaintiff acknowledges that it was against Defendant's company rules to urinate in Defendant's parking lot.  (Def.'s Stmt. at ¶ 34; Pl.'s Stmt. at ¶ 34).  Plaintiff testified that he is not aware of any other employees who urinated on company property but were not terminated for that conduct.  (*Id*.; Pl.'s Dep., Part I, at 232).  Plaintiff further admits there is nothing Defendant could have done to accommodate his alleged condition.  (Def.'s Stmt. at ¶ 34; Pl.'s Stmt. at ¶ 34).

On at least two other occasions, Defendant has terminated employees who have urinated on company property.  (Minish Decl.).  Thus, Plaintiff received the same punishment (termination) that others have received for similar conduct.  (Def.'s Stmt. at ¶ 40; Pl.'s Stmt. at ¶ 40).

9

ANALYSIS

A.      Disability Discrimination Claims:

"The plaintiff bears the burden of proving a violation of the PWDCRA." *Peden v. City of Detroit*, 470 Mich. 195, 204 (2004).    To establish a prima facie case under Michigan's PWDCRA, Plaintiff must establish: 1) that he is disabled under the Act; 2) his disability is unrelated to his ability to perform his job; and 3) he has been discriminated against in one of the ways delineated in the statute. *Id*. If he can establish a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its challenged actions. If Defendant does so, Plaintiff must present evidence to establish that Defendant's proffered reasons are not the true reasons, but a mere pretext for discrimination. *Mazur v. Wal-Mart Stores, Inc*., 250 Fed.Appx. 120, 124 (6th Cir. 2007).

1.      Has Plaintiff Established A Prima Facie Case?

Defendant first contends that Plaintiff's disability discrimination claims under the PWDCRA fail because he cannot establish a prima facie case. Defendant asserts that Plaintiff cannot establish a prima facie case because, among other things, he cannot establish that he is "disabled" under the PWDCRA.

The PWDCRA "generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job." *Peden*, 470 Mich. at 204; *see also* M.C.L. § 37.1103(d)(i)(A).

Defendant notes that Plaintiff claims that his shoulder injury, depression and anxiety, HIV positive status, and urination condition, constitute disabilities. Defendant's motion asserts

10

that Plaintiff "has produced no evidence, however, that these conditions substantially limited one or more major life activities." (Def.'s Motion at 9). Defendant's brief then proceeds to challenge each alleged disability.

With respect to his shoulder injury, Defendant notes that an impairment is not considered "substantial" if it is of merely a temporary nature. (Def.'s Br. at 9) (citing *Chiles v. Mach. Shop, Inc.*, 238 Mich.App. 462 (1999)). Defendant notes that Plaintiff testified that his doctors have advised that his shoulder will improve if he has surgery. Defendant contends that "corrective and mitigating measures must be considered in determining whether a person has a physical or mental impairment that 'substantially limits' a major life activity." (Def.'s Br. at 10) (citing *Nieman v. Gen. Motors Corp.*, 2008 WL 4940585 at *6 (E.D. Mich. 2008)).

Defendant also contends that the evidence does not support any finding that Plaintiff's depression/anxiety constitutes a disability. Defendant notes that Plaintiff was "only diagnosed with severe depression (a disability) after he was terminated." (Def.'s Br. at 10). Defendant asserts that because Plaintiff's disabling condition (severe depression) did not begin until after his termination, the condition does not qualify him for relief. (*Id.*). Defendant further asserts that Plaintiff has "provided no evidence that his depression prevented him from working, performing his job, or engaging in any other activity. *See Mohr v. Mich. Dep't of Corrs.*, 2006 WL 932986 * 8 (E.D. Mich. Apr. 11, 2006) (plaintiff was <u>not</u> a qualified individual with a disability where his depression did not 'considerably or profoundly limit his ability' to perform major life activities). Williams continued working after becoming depressed, did not have any medical restrictions pertaining to his depression, and had the mental capacity to attend college." (Def.'s Br. at 10-11).

11

With respect to his alleged urination condition, Defendant notes that neither of Plaintiff's "physicians reported, diagnosed, or even knew about [Plaintiff] having an 'urgent' need to urinate." (Def.'s Br. at 11). Defendant further asserts that Plaintiff has presented no evidence demonstrating that his alleged urination condition is anything other than temporary, and he has failed to present evidence that a simple corrective measure such as wearing a diaper would not reasonably control the condition." (Def.'s Br. at 11-12).

Finally, Defendant asserts that Plaintiff's "HIV positive status did not substantially limit one or more major life activities, and thus cannot be the basis for his disability discrimination claim." (Def.'s Br. at 12) (citing *Worster v. Carlson Wagon Lit Travel, Inc*., 353 F.Supp.2d 257, 365-66 (D. Conn. 2005) (HIV positive status did not constitute a disability when the plaintiff did not plan to have children and did not show that his HIV status affected any other major life activity).

In response to Defendant's Motion for Summary Judgment, Plaintiff devotes just one paragraph to his disability discrimination claims:

DISABILITY DISCRIMINATION

> Mr. Williams has numerous ailments that constitute a disability. Mr. Williams is HIV positive; he also suffers from stress, anxiety, depression and torn rotator cuff requiring surgery. Mr. Williams still suffers from his shoulder injury and at the time of his termination he was on restricted work status. Mr. William's [sic] can't get surgery because defendant has terminated his employment and left him with no medical insurance. Defendant has further disputed any of plaintiff's medical bills related to plaintiff's shoulder and defendant still refuses to pay outstanding medical bills associated with his shoulder.

(Pl.'s Br. at 7).[1] Notably, Plaintiff did not respond to *any* of the above arguments regarding his

---

[1] Plaintiff has not alleged, in either his complaint or his Response Brief, that Defendant violated the PWDCRA by failing to accommodate his medical conditions.

12

alleged disabilities, nor did he present evidence to establish that any of the alleged conditions substantially limited one or more of Plaintiff's major life activities.

Accordingly, the Court concludes that Plaintiff has not met his burden of establishing that he is disabled under the statute.

> 2.   Has Plaintiff Established That Defendant's Legitimate, Non-Discriminatory Reasons For The Challenged Actions Are Pretextual?

Assuming *arguendo* that Plaintiff could establish a prima facie claim under the PWDCRA, Defendant has articulated legitimate, non-discriminatory reasons for its challenged actions. Defendant contends that Plaintiff cannot show that those reasons are a pretext for discrimination.

> a.   Reducing Plaintiff's Hours In January 2008:

With respect to Plaintiff's claim that Defendant discriminated against him by reducing his hours in January of 2008, Defendant asserts that it did so because it experienced reduced sales at that time and because Plaintiff had the lowest seniority and was a part-time employee. Indeed, Defendant notes that Plaintiff admitted during his deposition that:  1) Defendant often reduces employee's hours in January because it experiences reduced sales after the holidays; 2) Shifts are scheduled by seniority by Defendant and the schedules of full-time employees take precedence; 3) Plaintiff had the lowest seniority in the department and was a part-time employee; 4) Plaintiff attended college throughout his employment with Defendant and Defendant accommodated Plaintiff's school schedule and scheduled his shifts around his classes; and 5) Plaintiff's school schedule for Spring 2008 limited his availability more than his Fall 2007 school schedule.

In response to this legitimate, non-discriminatory reason for the challenged action, and

13

the evidence supporting same, Plaintiff has not offered any evidence to establish that the reason is a pretext for discrimination.

              b.      <u>Unfairly Evaluating Plaintiff:</u>

In his complaint, Plaintiff alleged that Defendant discriminated against him, based upon his disability, by unfairly evaluating him.  (Am. Compl. at ¶ 28).

Contrary to the allegations in his complaint, however, Plaintiff admitted at his deposition that Defendant did not unfairly evaluate him.  (Def.'s Stmt. at ¶ 47; Pl.'s Stmt. at ¶ 47).

              c.      <u>Terminating Plaintiff:</u>

With respect to his termination, Defendant has offered a legitimate, non-discriminatory reason for that action.  Defendant states that it terminated Plaintiff because, in violation of both local ordinances and Defendant's own policies, Plaintiff urinated in public in the parking lot of Warehouse 390.

In response, Plaintiff has not offered any evidence to establish that Defendant's stated reason for his termination is a pretext for discrimination.  To the contrary, he admits his conduct and admits that it violated Costco's policies and the local ordinances.  Plaintiff further admits that he is not aware of any other employees who publicly urinated on Defendant's property but were not terminated and Defendant has presented evidence to establish that it has terminated other employees for the very same conduct.

Accordingly, the Court concludes that Defendant is entitled to summary judgment with respect to Plaintiff's disability discrimination claims.

B.    <u>Disparate Treatment Claims:</u>

Plaintiff's Amended Complaint contains a count titled "Disparate Treatment," wherein

14

Plaintiff alleges that "the employment policies practiced by the defendant in hiring may appear neutral on their face but have a substantial adverse impact" on disabled individuals. (Am. Compl. at ¶ 31). In this count, Plaintiff also alleges that he "was qualified for his position and was unfairly denied an opportunity to continue in his position due to his disability." (Am. Compl. at ¶ 32).

Defendant contends that it is entitled to summary judgment with respect to this count for several reasons. First, Defendant contends that this count fails because Plaintiff has not established that he is disabled within the meaning of the PWDCRA. (Def.'s Br. at 15)(citing *Barron v. William Beaumont Hosp.*, LEXIS 649 (Mich. App. 2001) (affirming summary judgment for employer with respect to plaintiff's disparate treatment claim when she was not disabled). Defendant also contends that the count fails because Plaintiff "clearly admitted at his deposition that (1) he does not believe Costco discriminated against him with respect to hiring, (2) he is not aware of any disabled individuals Costco discriminated against during the hiring process, (2) he does not believe he was discriminated against when Costco failed to hire him for supervisor and deli positions, and (4) he does not know the qualifications of the individuals who received other positions for which he applied (and therefore can make no credible claim that those individuals were less qualified than he was)." (Def.'s Br. at 15)(citing Def.'s Stmt. at ¶¶ 24 & 49; Pl.'s Stmt. at ¶¶ 24 & 49; *see also* Pl.'s Dep., Part I, at 164-65).

Moreover, as stated above, with respect to his termination, Plaintiff admits that he is not aware of any other employees who publicly urinated on Defendant's property but were not terminated and Defendant has presented evidence to establish that it has terminated other employees for the same conduct.

In his Response Brief, Plaintiff did not respond to these challenges to his Disparate Treatment count.  In fact, his Brief is silent at to his disparate treatment count with the exception of the following statement:

> Mr. William's [sic] was also subjected to disparate treatment due to his complaints of harassment.  On or about March 26, 2007, Mr. William's [sic] notified Manager John Vosler that Melody McCoy told him that he would never be considered for promotion because of his ongoing complaints of harassment. (Ex. 10 Career Development Opportunity for Interviewed Candidates).

(Pl.'s Resp. Br. at 7).  Exhibit 10 to Plaintiff's Response Brief appears to be a form indicating that Plaintiff was not selected for a Membership Assistant position in March of 2007, on which Plaintiff appears to have made some handwritten notations about a statement allegedly made to him.  Notably, however, Plaintiff has not submitted any admissible evidence regarding such alleged statements, such as an affidavit or deposition testimony.

Based on what has been presented, the Court concludes that summary judgment must be granted in favor of Defendant with respect to Plaintiff's disparate treatment count.

C.    Retaliation Claims:

Plaintiff claims that Defendant unlawfully retaliated against him for filing retaliation and workers' compensation claims. (Def.'s Stmt. at ¶ 50; Pl.'s Stmt. at ¶ 50).

Plaintiff's complaint alleges that he filed "both a Retaliation claim and a Workers Compensation claim while employed against the defendant" and that "[o]n various occasions, the plaintiff was informed that the defendant did not like the plaintiff filing either claim or working with restrictions."  (Am. Compl. at ¶¶ 35-36).

During his deposition, however, Plaintiff testified contrary to those allegations.  Plaintiff testified that no one from Defendant ever said that they did not like the fact that he had filed a

16

retaliation claim, a charge of discrimination, or a workers compensation claim:

> Q.   Here's my question.  Did someone tell you, did someone say to you that Costco didn't like the fact that you had filed a retaliation claim or that you had filed a charge of discrimination?
> A.   No.
> Q.   Did someone tell you that Costco didn't like the fact that you had filed a workers' comp claim?
> A.   No.
> Q.   Were you informed on any occasion that Costco did not like you filing retaliation claims or charges of discrimination or workers' comp claims?
> A.   No.
> Q.   You were never informed of that, right?
> A.   No.
> Q.   Am I right?
> A.   You're right.

(Pl.'s Dep., Part I, at 248-49).  Plaintiff further testified that, contrary to the allegations in his

complaint, no one at Costco ever told him they did not like him working with job restrictions:

> Q.   Okay.  Has anybody ever told you that Costco didn't like you collecting workers' compensation or working with job restrictions?
> A.   No.

(Pl.'s Dep., Part I, at 250).

In addition to Plaintiffs testimony cited above, Defendant's Motion asserts that Plaintiff's

retaliation claims fail on additional grounds.

Defendant asserts that Plaintiff cannot establish a prima facie case of retaliation because

there "is no record evidence that McCoy, who made the decision to terminate [Plaintiff], knew

he filed a retaliation charge before she terminated him on March 19, 2008."  (Def.'s Br. at 16)

(citing *Mulhall v. Ashcroft*, 287 F.3d 543, 551-52 (6th Cir. 2002)(plaintiff failed to establish

prima facie case where plaintiff failed to establish the decision-maker knew of his protected

activity).

Defendant also asserts that Plaintiff cannot establish the requisite causal connection

17

between his protected activity and the adverse actions of which he complains.  (Def.'s Br. at 16-17).

Defendant further asserts that even if Plaintiff could establish a prima facie case of retaliation, Defendant has asserted a legitimate reason for Plaintiff's termination and Plaintiff has offered no evidence from which he can prove pretext.  (Def.'s Br. at 17).

Plaintiff's brief does not respond to these various arguments challenging his retaliation claims, other than to cite to his Exhibit 10.  Again, Exhibit 10 to Plaintiff's Response Brief appears to be a form indicating that Plaintiff was not selected for a Membership Assistant position in March of 2007, on which Plaintiff appears to have made handwritten notations about a statement allegedly made to him.  Notably, Plaintiff has not submitted any admissible evidence regarding such alleged statements.

Accordingly, the Court shall grant summary judgment in favor of Defendant with respect to Plaintiff's retaliation claims.

D.    <u>FMLA Claims:</u>

As explained in *Taylor v. Union Institute*, 30 Fed. Appx. 443, 452 (6th Cir. 2002), the FMLA creates prescriptive and proscriptive employee rights:

> The prescriptive rights created by the Act provide "entitlements" to employees and "set floors for employer conduct."  To prevail on the basis of the Act's prescriptive rights, the plaintiff need not show that she was treated worse than other employees, just that she was denied the Act's entitlements.  Proscriptive rights, on the other hand, prohibit disparate employer conduct with regard to employees taking leave.

*Id.*  Thus, "[t]here are two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. §2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. §2615(a)(2)."  *Smith v. Aco, Inc*., 368 F.Supp.2d

18

721, 731 (E.D. Mich. 2005).

1.      FMLA Claims Based Upon Interference Theory:

To prevail on an interference claim, a plaintiff must establish that:  (1) he is an "eligible employee" under 29 U.S.C. § 2611(2); (2) the defendant is an "employer" under 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled.  *Cavin v. Honda of America Mfrg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

Here, Defendant does not dispute that Plaintiff was an eligible employee under § 2611(2), nor does it dispute that it is an employer as that term is defined in § 2611(4).  Defendant contends that Plaintiff cannot establish an interference claim because, to the extent that Plaintiff's complaint alleges that Defendant failed to allow him to take leave, Plaintiff "admitted at his deposition that Costco never denied his requests for FMLA leave, that he was allowed to take intermittent leave without difficulty, and that he was allowed to return to his position after taking such leave."  (Def.'s Br. at 20).  The Court agrees.

Plaintiff's  Amended Complaint alleges that Defendant violated the FMLA by, among other things, "failing to grant plaintiff time off," and failing to "restore Plaintiff to his previous position," (Am. Compl. at ¶ 60).  In addition, Plaintiff's Response Brief asserts that Defendant denied Plaintiff "intermittent FMLA leave."  (Pl.'s Response Br. at 6).  During his June 23, 2009 deposition, however, Plaintiff testified that:

•       No one ever prevented him from requesting FMLA leave or filling out a leave request. (Pl.'s Dep. at 72);

•       Plaintiff was never denied FMLA leave by Defendant.  (Pl.'s Dep. at 72);

19

- When Plaintiff requested intermittent FMLA leave, Defendant granted that request. (Pl.'s Dep. at 79); and

- Plaintiff, in fact, took intermittent FMLA leave and testified that on occasions when he felt too weak or fatigued to come to work, he took days off. Plaintiff allowed him to do so and brought him back to work. (Pl.'s Dep. at 79).

Given Plaintiff's testimony, the Court concludes that Plaintiff cannot proceed with an FMLA claim based upon an interference theory.

      2.    <u>FMLA Claims Based Upon Retaliation or Discrimination Theory</u>:

"An FMLA retaliation claim based solely upon circumstantial evidence of unlawful conduct is evaluated according to the tripartite burden-shifting framework set forth in *McDonnell Douglass*."[2] *Daugherty v. Sajar Plastics, Inc*., 544 F.3d 696, 707 (6th Cir. 2008). "A plaintiff must typically make a prima facie showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id*.

In his Response Brief, Plaintiff asserts that Defendant retaliated against him by: 1) reducing Plaintiff's hours "after filing his complaints of discrimination." (Pl.'s Response Br. at 6). Defendant also construes Plaintiff as asserting that Defendant terminated him in retaliation for having taken FMLA leave.

With respect to Plaintiff's claim that Defendant retaliated against him by reducing his

---

[2]Citing *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001), Plaintiff's brief asserts that the *McDonnell Douglas* approach does not apply to his claims. In that case, the Ninth Circuit held that the *McDonnell Douglas* approach did not apply to the plaintiff's FMLA claims in that case because there was "direct, undisputed evidence" that the defendant employer considered the plaintiff's FMLA absences as a negative factor in the decision to terminate her. Here, however, Plaintiff has not presented any such evidence.

hours in January of 2008, Defendant asserts that it did so because it experienced reduced sales at that time and because Plaintiff had the lowest seniority and was a part-time employee.  Again, Defendant notes that Plaintiff admitted during his deposition that:  1) Defendant often reduces employee's hours in January because it experiences reduced sales after the holidays; 2) Shifts are scheduled by seniority by Defendant and the schedules of full-time employees take precedence; 3) Plaintiff had the lowest seniority in the department and was a part-time employee; 4) Plaintiff attended college throughout his employment with Defendant and Defendant accommodated Plaintiff's school schedule and scheduled his shifts around his classes; 5) Plaintiff's school schedule for Spring 2008 limited his availability more than his Fall 2007 school schedule.  In response to this legitimate, non-discriminatory reason for the challenged action, and the evidence supporting same, Plaintiff has not offered any evidence to establish that the reason is a pretext for discrimination.

With respect to a retaliation claim based upon his termination, Defendant asserts that Plaintiff cannot establish a prima facie case because he cannot establish a causal connection between his termination and his protected activity.  Defendant further asserts that Plaintiff has failed to present any evidence to establish that its legitimate, non-discriminatory reason is a pretext for discrimination.

The Court agrees that Defendant is entitled to summary judgment with respect to Plaintiff's FMLA claims based on a retaliation theory.

3.      FMLA Claims Based Upon "Failure To Accommodate" Theory:

Plaintiff appears to argue that Defendant violated the FMLA by denying "the plaintiff

21

reasonable accommodations" in that Defendant: 1) did not follow Dr. Little's restrictions regarding working in inclement weather; and 2) "failed to place plaintiff in an in-store position with access to a bathroom." (Pl.'s Response Br. at 6). Plaintiff has cited no authority whatsoever to support his assertion that he can pursue a claim *under the FMLA* under a "failure to accommodate" theory.[3]

Defendant asserts that this claim fails for at least two reasons. "First, the inclement weather restriction did not apply to Williams' position in Member Services; rather, it applied only to the Cart Crew duties Williams had in 2007." (Def.'s Response Br. at 19) (citing Def.'s Stmt. at ¶ 17; Pl.'s Stmt. at ¶ 17)). "Second, the FMLA is a leave statute, not an accommodation statute, and does not require an employer to accommodate an employee's medical restrictions. *See Hoge v. Honda of Am. Mfg.*, 382 F.3d 238, 249-50 (6th Cir. 2004)('[t]he leave provisions of [FMLA] are wholly distinct from the reasonable accommodation obligations of employers covered under the [ADA];' *Alifano v. Merck & Co.*, 175 F.Supp.2d 792, 795 (E.D. Penn. 2001) ('Unlike the [ADA], the FMLA does not require an employer to reasonably accommodate an employee's serious health condition.')." (Def.'s Response Br. at 19-20).

The Court agrees that Plaintiff cannot pursue a claim under the FMLA based upon a "failure to accommodate" theory. Although Plaintiff could assert such a claim under the PWDCRA or the ADA, he has not asserted any such claim here. Moreover, even if he had, there would still be fundamental flaws with a failure to accommodate claim asserted under the facts of this case.

---

[3]Plaintiff has not asserted any claims under the ADA and he has not asserted a failure to accommodate claim under the PWDCRA.

"Like the ADA, the PWDRA prohibits an employer from discharging an employee because of [his] disability, MICH. COMP. LAWS § 37.1201(d)(1)(b), and imposes a duty on the employer to accommodate an individual's disability absent undue hardship on the employer. *Id*. § 37.1201(1)(g) (prohibiting discrimination 'when adaptive devices or aids may be utilized thereby enabling that individual to perform the specific requirements of the job.'" *Salim v. MGM Grand Detroit, L.L.C.*, 106 Fed.Appx. 454, 458 (6th Cir. 2004).

Here, Plaintiff testified that his urination condition causes him to urinate on himself without warning, before he can do anything about it. (Def.'s Stmt. at ¶ 37; Pl.'s Stmt. at ¶ 37). Notably, Plaintiff admits there is nothing Defendant could have done to accommodate his condition. (Def.'s Stmt. at ¶ 34; Pl.'s Stmt. at ¶ 34).

Accordingly, the Court concludes that Defendant is entitled to summary judgment with respect to Plaintiff's FMLA claims based on a failure to accommodate theory.

## CONCLUSION & ORDER

IT IS ORDERED that Defendant's Motion to Strike Plaintiff's Supplemental Index of Exhibits (Docket Entry No. 28) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Docket

23

Entry No. 22) is GRANTED and this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  October 15, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 15, 2009, by electronic and/or ordinary mail.

s/Jennifer Hernandez
Case Manager